IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSÉ R. REMUS-MILÁN, et al.,

    Plaintiffs,

v.

MARCOS IRIZARRY-PAGÁN, et al.,

    Defendants.

CIVIL NO. 13-1716 (PAD)

**MEMORANDUM AND ORDER**

Delgado-Hernández, District Judge.

Plaintiffs are former transitory employees of the Municipality of Lajas whose appointments expired on December 31, 2012.[1] They initiated this action against the Municipality, its Mayor Marcos Irizarry-Pagan, Jacqueline Rodríguez-Irizarry and Ahymet Rivera-Rodríguez in their official and personal capacities, alleging to have been discriminated against because of their affiliation to the New Progressive Party ("NPP") in violation of the First Amendment and Puerto Rico law (Docket No. 10).[2] Before the court is defendants' "Motion for Summary Judgment" (Docket No. 113), which plaintiffs opposed (Docket No. 129). Defendants replied (Docket No. 138) and plaintiffs sur-replied (Docket No. 143). For the reasons stated below, defendants' motion is GRANTED IN PART AND DENIED IN PART.[3]

---

[1] Plaintiffs are José Remus-Milán, Ferdinand Detrés-Arroyo, Antonio Irizarry-Hernández, Carlos Nazario-Ocasio, Carmen Rosado-Rivera, and Isidro Baez-Rivera. Remus-Millan, Destrés-Arroyo, Irizarry-Hernández and Báez-Rivera were "Workers" of the Municipality, Rosado-Rivera was a "Maintenance Worker," and Nazario-Ocasio an "Office Clerk."

[2] From January 1997 through December 2008, Irizarry-Pagán a/k/a "Turin" was the Mayor of the Municipality of Lajas under the Popular Democratic Party ("PPD"). After the general elections held in November 2008, the candidate running for Mayor of Lajas under the NPP, Leovigildo Cotté-Torres a/k/a "Leo", defeated Irizarry-Pagán and became the Mayor of Lajas from January 2009 through December 2012. As a result of the general elections held in November 2012, Irizarry-Pagán defeated Cotté-Torres and became once again the Mayor of Lajas.

[3] The parties submitted a little over 900 statements of fact (including proposed statements of fact, the corresponding opposing statements, additional statements of facts and the corresponding responses to the additional facts) and over 3,800 pages of

### A. **Prima Facie Showing**

In the main, plaintiffs contend that defendants refused to renew their transitory appointments after they took possession of the Municipal administration in January 2013, because of their political affiliation.[4]  A *prima facie* political discrimination claim has four elements: (1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action.  Reyes-Orta v. Puerto Rico Highway and Transp. Authority, ---F.3d----, 2016 WL 285742, *4 (1st Cir. 2016)(quoting, Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 13 (1st Cir. 2011)(other internal citations omitted)).

In their motion, defendants do not contest that plaintiffs (i) are members or supporters of the PDP whereas plaintiffs are members or supporters of the NPP; and (ii) were not hired after their transitory appointments expired on December 31, 2012. Id. at p. 7.  But they call into question plaintiffs' ability to establish that they were aware of their political affiliation (the knowledge prong of the *prima facie* case), and posit that plaintiffs' political affiliation was not causally connected to the non-renewal of their transitory appointments (Docket No. 144 at p. 6).  A perusal of the record shows that if credited by the jury, the evidence submitted by both Remus and Destres confirms that defendants were aware of their political affiliation and that the sole reason for the

---

supporting documents, some of which are irrelevant for purposes of summary judgment.  Even though the court reviewed every statement and supporting material, there are significant factual controversies, including disagreements pertaining to plaintiffs' testimony and defendants' knowledge, matters that go to weight and credibility.  These disputes are to be resolved by the jury, not at summary judgment.

[4] The claims of Maria Torres-Martínez were dismissed without prejudice on June 13, 2014 for failure to announce new legal representation and to show cause as ordered on May 29, 2014 (Docket No. 32). Another plaintiff, David Rodriguez-López, moved for voluntary dismissal of his claims (Docket No. 101), which the court was granted (Docket No. 102).

non-renewal of their appointment was their affiliation to the NPP. <u>See</u>, <u>e.g.</u> Docket No. 123, Plaintiffs' Statement of Additional Uncontested Facts ("POS" at ¶¶ 79-92 detailing the political charged atmosphere prior to the General Election of 2012, whereby defendants openly acknowledged their political affiliation and even made comments that the NPP's days were counted, they would be fired once Irizarry-Pagán won the elections, that the NPPers were "MFs", son of bitches, and "cabrones," that they did not want anyone from the NPP working in the municipality, and that even Rivera stated that "he was going to get rid of all the NPPers who worked in the municipal administration after the PDP wins the general Election").

Defendants urge the court to weigh the evidence presented – which includes defendants' denial of plaintiffs' deposition testimony – and conclude they were not aware of Remus' and Destres' political affiliation. That cannot be done, as only the jury can choose between the parties' differing versions of the truth at trial. <u>See</u>, <u>Reeves</u> v. <u>Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 150-52, 120 S.Ct. 2097, 2110-2011 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"); <u>Rodriguez</u> v. <u>Municipality of San Juan</u>, 659 F.3d 168, 175 (1st Cir. 2011)(noting that ". . .the ground rules of summary judgment leave 'no room for credibility determination, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be)' on the cold pages of the record") (internal citations omitted).

The same is true with respect to Irizarry's and Nazario's claims against Irizarry and Rivera.[5] <u>See</u>, POS at ¶¶ 93-99 (including testimony of Nazario that Rivera would tell them that

---

[5] In fact, defendants conceded that Rivera-Rodríguez knew the political affiliation and activism of Remus, Destrés, Irizarry-Hernández and Nazario-Ocasio (Docket No. 114 at p. 18).

they had certain number of days left before they leave and that Irizarry told him that he was one of the few NPPs who were good and invited him to keep doing a good job. Nevertheless, this conclusion does not hold in connection with Irizarry's and Nazario's claims against Rodriguez-Irizarry, for it is uncontested that both admitted that Rodriguez-Irizarry had no knowledge of their NPP affiliation.

To that end, Nazario admitted in his deposition that he does not know Rodriguez-Irizarry, has never interacted with her and has no evidence in support of his allegation that she was aware of this NPP affiliation.[6]  And the same must be said of Irizarry's claims against Rodriguez-Irizarry.[7]  Thus, Irizarry's and Nazario's claims against Rodriguez-Irizarry fail as ". . .lack of knowledge of plaintiffs' political affiliation must lead to entry of summary judgment." Rivera-Torres v. Rey-Hernández, 2006 WL 2460833, *2 (D.P.R. August 23, 2006)(citing González de Blasini v. Dept. de la Familia, 377 F.3d 81, 85-86 (1st Cir. 2004)).

Finally, a review of the record shows that with respect to Rosado, there is no evidence to support her allegation that defendants knew of her political affiliation. Plaintiffs seem to

---

[6] In his deposition, Nazario testified as follows:

> Q: Okay. Why do you allege that Ms. Jaqueline Rodriguez is well aware of your NPP political affiliation?
> A: Well, regularly I don't know here, have never interacted with her.
> Q: So you don't have any evidence as to Ms. Jaqueline Rodriguez that would support your allegation that she knows or is aware of your NPP political affiliation, correct?
> A: Correct.

See, Docket No. 113, Exh. R at p. 99, lines 13-22.

[7] In Irizarry's own words:

> Q: Mr. Irizarry, one of your allegations in the complaint is that Ms. Jacqueline Rodriguez Irizarry is well aware of your NPP political affiliation. What evidence do you have of this?
> A: None. None. I met her for the first time at the last deposition I came to, and today I saw her again, and I didn't even know she was the director of Human Resources.

See, Docket No. 113, Exh. U at p. 108, lines 3-10.

acknowledge this fact as they did not even argue in their opposition to defendants' motion for summary judgment that any of the defendants knew of her political affiliation. And this is further confirmed by Rosado's deposition testimony, during which she acknowledged that she has no evidence to support her allegation that defendants had any knowledge of her political affiliation.[8] On that basis, her claims must be dismissed.

Baez' claims suffer the same fate. According to Baez, at least one of the defendants (Irizarry Pagán) was aware of his political affiliation, for he visited his house as part of his political campaign. Yet this is insufficient to establish that Irizarry knew of his political affiliation. See, Román v. Delgado-Altieri, 390 F.Supp.2d 94, 102-103 (D.P.R. 2005)(knowledge of political affiliation cannot be merely established through testimony of having been seen, or, for that matter, met during routine campaign activity participation, having been visited by the now incumbent defendant while said defendant was a candidate to the position he now holds)(citing, González-Pina v. Rodriguez, 407 F.3d 425, 432 (1st Cir. 2005)). Furthermore, Baez admitted during his deposition that he is not alleging that Rodriguez was aware of his political affiliation,[9] and that he

---

[8] In her deposition, Rosado was asked as follows:

> Q: So, Ms. Rosado, the fact is that you don't have any evidence whatsoever to support the allegation that defendants were well aware of your NPP political affiliation, correct?
> A: No.
> Q: Did you ever witness the defendants make any discriminatory comments based on politics?
> A: No
> Q: You were never subject of political discriminatory comments from defendants, correct?
> A: No, I wasn't.
> Q: Ms. Rosado, the fact is that you don't have any evidence whatsoever to support your allegation that the fact that you weren't appointed under Mr. Irizarry's administration had to do with politics, correct?
> A: No.

See, Docket No. 113, Exh. W at p. 74, lines 13-25 and p. 75, lines 1-4.

[9] In his deposition, Baez testified as follows:

> Q: Oka. Why do you say that Ms. Jacqueline Rodriguez is well aware of your NPP political affiliation?

"can't say" that Rivera was aware of his political affiliation.[10] And so, those claims must be dismissed.

### B. Mt. Healthy

Defendants invoke the Mt. Healthy defense, albeit without much development. Because some plaintiffs have sufficient evidence to establish a *prima facie* case, the burden shifts to the defendants to show that "(i) they would have taken the same action in any event; and (ii) they would have taken such action for reasons that are not unconstitutional." Reyes Orta, 811 F.3d at 73 (quoting, Vélez-Rivera v. Agosto-Alicea, 437 F.3d 145, 152 (1st Cir. 2016); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 286-87 (1977)). The "key inquiry" here is whether defendants can show they had a lawful reason not to renew the appointments, and that they would have used that lawful reason to do so even without considering plaintiffs' political affiliation as a factor. Reyes-Orta, 811 F.3d at 77 (so noting).

From that perspective, it is apparent that a genuine dispute exists as to defendants' reasons for the non-renewal of the appointments of Remus, Destres, Irizarry and Nazario, inasmuch as those plaintiffs have adequately cast doubts on the credibility of the theories or explanations that defendants have put forward in support of their decision – including the garbage emergency

---

A: No, never.
Q: Do you know who Jacqueline Rodriguez is?
A: Well, yes, I could say that I know her. I know who she is.
Q. Do you know her personally?
      [. . .]
A: Mr. Báez, what evidence then do you have that Ms. Jacqueline Rodriguez knew about your NPP political affiliation
Q: Its just that I've never said she knows that.

See, Docket No. 113, Exh. X at pp. 70, lines 14-20 and 72, lines 13-17.

[10] See, Docket No. 113, Exh. X at pp. 73, lines 6-9.

theory.[11] While defendants claim the reasons behind the non-renewal were not politically motivated, plaintiffs have presented evidence that if credible will show (i) plaintiffs' transitory appointments were not renewed immediately following the change in political administration in Lajas from the NPP to the PDP; (ii) admissions allegedly made by Irizarry-Pagán to some plaintiffs that he would not rehire them and that the positions available were reserved for the people that had helped him in the political campaign; and (iii) that the individuals identified by plaintiffs that were hired by the Municipality during the time they were seeking to be reappointed are supporters of the PDP and/or supported Irizarry-Pagán's bid for mayor in 2012. Which version of the events the jury will choose to believe, is for the jury to decide.

### C. Qualified immunity

Defendants argue they are shielded by the doctrine of qualified immunity. Qualified immunity is an affirmative defense that operates as "a shield against unwarranted charges that the official violated the Constitution in the course of performing the functions of the office." Garnier v. Rodriguez, 506 F.3d 22, 26 (1st Cir. 2007) (internal citation omitted). Whether defendants are entitled to qualified immunity, calls for a two-part analysis. Ford v. Bender, 768 F.3d 15, 23 (1st Cir. 2014); Vázquez-Burgos v. Rodriguez-Pérez, 2015 WL 1578694, *1 (D.P.R. April 9, 2015)(same).

First, the court inquire, whether the facts, taken most favorably to the party opposing summary judgment, make out a constitutional violation. Ford, 768 F.3d at 23. Second, "whether

---

[11] In essence, defendants claim that as soon as Irizarry took possession of the Municipality, he had to deal with the emergency caused by the lack of garbage collection in the Municipality and to clean the most affected areas. For that, he issued an Executive Order declaring a state of emergency, authorized the recruitment of necessary personnel, and that persons from all parties were hired by the Municipality (Docket No. 114 at pp. 20-23). Plaintiffs, however, have directed the court's attention to evidence that, if credited by the jury, could show that defendant's garbage emergency theory is nothing but a pretext for not rehiring plaintiffs (Docket No. 129 at pp. 29-31).

the violated right was clearly established at the time that the offending conduct occurred." Id. Along the same line, the First Amendment proscribes subjecting government employees to adverse employment actions on account of their political affiliation. Rutan v. Republican Party of Illinois, 497 U.S. 62, 64-65 (1990).[12] And, as previously explained, there is a factual issue as to whether plaintiffs' political affiliation played any part in the non-renewals of their appointments. See, Prokey v. Watkins, 942 F.2d 67, 73 (1st Cir. 1991)(noting that when only a fact finder's determination of the conflicting evidence as to the underlying historical facts will permit resolution of the qualified immunity issue, summary judgment ceases to be an appropriate vehicle). By extension, defendants are not entitled to qualified immunity at this stage.

### D. Supplemental State Law Claims.

Defendants ask dismissal of all state claims. Because the request is predicated on the assumption that the court will dismiss the federal claims, dismissal is not appropriate.

### E. Conclusion.

For the reasons stated, defendants' motion for summary judgment at Docket No. 113 is GRANTED IN PART AND DENIED IN PART. Plaintiff Rosado's and Baez' claims are dismissed, as well as Irizarry's and Nazario's claims against Rodriguez. Therefore, the following claims remain:

(i)   Remus's claims against Irizarry, Rodriguez and Rivera;

(ii)  Destres' claims against Irizarry, Rodriguez and Rivera;

(iii) Irizarry's claims against Irizarry and Rivera;

---

[12] Moreover, as noted in the court's previous Opinion and Order in this case, it is well established that political patronage restrains freedom of belief and association, core activities protected by the First Amendment. Remus-Milan v. Irizarry-Pagán, 81 F.Supp.3d 174, 181-182 (D.P.R. 2015). This is also true with respect to a politically motivated non-renewal of a term of employment, regardless of the transitory nature of the position. Id. at 182.

   (iv)  Nazario's claims against Irizarry and Rivera.

**SO ORDERED**.

In San Juan, Puerto Rico, this 8th day of March, 2016.

              s/Pedro A. Delgado-Hernández
              PEDRO A. DELGADO-HERNÁNDEZ
              United States District Judge